IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED RENTALS NORTHWEST, INC.,**

      **Plaintiff,**

vs.                                                                                  Civ. No. 08-00050 RLP/CD

**YEAROUT MECHANICAL, INC.,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the Motion of Defendant, Yearout Mechanical, Inc., ("Yearout" herein) to Dismiss Plaintiff's Complaint for Indemnification with prejudice pursuant to F.R.Civ.P. 12(b)(6) on the ground that the indemnity provision at issue is unenforceable as a matter of law. (Docket No. 23). For the reasons stated herein, the Motion is **GRANTED**.

### Legal Standard

A court's role in reviewing a Rule 12(b)(6) motion is not to weigh evidence that the parties might present at trial, but to assess whether the complaint's allegations, standing alone, are legally sufficient to state a claim for which relief may be granted. Thomas v. National Ass'n of Letter Carriers, 225 F.3d 1149, 1157 (10th Cir.2000). A claim should be dismissed only where, without a doubt, the plaintiff can prove no set of facts in support of the claim that would entitle it to relief. Scheur v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) *overruled on other grounds* Davis v. Scheur, 468 U.S. 183 (1984).

### Facts alleged in the Complaint

Plaintiff, United Rentals, Northwest, Inc., ("URI" herein), an Oregon corporation, is engaged in the business of leasing equipment to construction contractors and others. (Complaint ¶ 3). Yearout, a New Mexico corporation, is engaged in the business of providing mechanical contracting

services. (Complaint ¶4).  On March 1, 2006, URI and Yearout entered into a "Rental Out Agreement" (Complaint ¶7), pursuant to which URI leased to Yearout a 50 foot scissor lift (Complaint ¶10).  The Rental Out Contract specifies that the job site is the "Sunport Hanger 3 Phase 2, Albu." (Complaint, Docket No. 1, Exh. B, p. 1).  Paragraph 3 of the Rental Out Agreement provides:

> INDEMNITY/HOLD HARMLESS. TO THE FULLEST EXTENT PERMITTED BY LAW, CUSTOMER AGREES TO INDEMNIFY, DEFEND AND HOLD UNITED HARMLESS FROM AND AGAINST ANY AND ALL LIABILITY, CLAIM, LOSS, DAMAGE OR COSTS (INCLUDING, BUT NOT LIMITED TO, ATTORNEYS' FEES, LOSS OF PROFIT, BUSINESS INTERRUPTION OR OTHER SPECIAL OR CONSEQUENTIAL DAMAGES, DAMAGES RELATING TO BODILY INJURY, DAMAGES RELATING TO WRONGFUL DEATH) CAUSED BY OR IN ANY WAY ARISING OUT OF OR RELATED TO THE OPERATION, USE, MAINTENANCE, INSTRUCTION, POSSESSION, TRANSPORTATION, OWNERSHIP OR RENTAL OF THE EQUIPMENT, INCLUDING WHENEVER SUCH LIABILITY, CLAIM LOSS, DAMAGE OR COST IS FOUNDED, IN WHOLE OR IN PART, UPON ANY NEGLIGENT OR GROSSLY NEGLIGENT ACT OR OMISSION OF UNITED OR THE PROVISION OF ANY ALLEGEDLY DEFECTIVE PRODUCT BY UNITED. THIS INDEMNITY PROVISION APPLIES TO ANY CLAIMS ASSERTED AGAINST UNITED BASED UPON STRICT OR PRODUCT LIABILITY CAUSES OF ACTION OR BREACH OF WARRANTY.

(Complaint, Docket No. 1, Ex. B, p. 2).

Two Yearout employees were killed when the scissor lift rented from URI fell over. (Complaint ¶10).  The lift was being used to install sections of duct work at the Eclipse Aviation Hanger.  (Complaint, Ex. C, ¶¶ 13, 14, 19).

URI is a defendant in the case of *Magoff, et al., v. JLG Industries, Inc.*, Cause No. CIV-06-0973 MCA/ACT (the "*Magoffe* Case").  (Complaint ¶¶ 2, 9).  The Plaintiffs in *Magoff* claim that URI is strictly liable for defective design and manufacture and for negligence in connection with the deaths the Yearout employees.  (Complaint ¶ 10).

In the case pending in this court, URI seeks indemnification from Yearout for all expenses,

judgments, settlements, attorneys' fees, and any and all other damages that Plaintiffs actually recover from it in the *Magoffe* case. (Complaint ¶¶2, 11). URI's indemnification claim arises from ¶ 3 of the Rental Out Agreement. (Complaint ¶¶ 8-11).

## The Issue Presented

Yearout contends that the Rental Out Agreement "is a construction contract 'relating to' the construction, alteration, repair or maintenance of real property," and therefore the indemnity provisions contained therein are void as against public policy pursuant to New Mexico's Anti-indemnity statute, N.M.Stat.Ann. 1978 §56-7-1. (Docket No. 23, p. 5).

URI contends that the Rental Out Agreement is not a construction contract subject to N.M.Stat.Ann. §56-7-1, but an equipment lease agreement containing an unambiguous indemnification provision which is enforceable as a matter contract.

## Matter of First Impression

The New Mexico courts have not addressed whether N.M.Stat.Ann. 1978 §56-7-1 governs lease agreements for construction equipment. As a federal court sitting in diversity, I must resolve an issue of first impression regarding the application of New Mexico law based upon a prediction of how the New Mexico Supreme Court would resolve that issue, See Carl v. City of Overland Park, 65 F.3d 866, 872 (10th Cir.1995). In doing to, I must consider state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority. Winters v. Charter Oak Fire Ins. Co., 4 F. Supp. 2d 1288, 1292-1293 (D. N.M. 1998).

## Discussion

### Anti-Indemnity Legislation

The New Mexico Legislature enacted two anti-indemnity statutes in 1971: N.M.Stat.Ann.

§56-7-1[1] titled *Real property; indemnity agreements; agreements void,* and N.M.Stat.Ann. §56-7-2[2] titled *Oil, gas or water wells and mineral mines; agreement, covenants and promises to indemnify void.* Both statutes were amended in 1999, to include "foreign or domestic" contracts performed within New Mexico. See Piña v. Gruy Petroleum Management Co., 139 N.M. 619, 622, 136 P.2d 1029, 1032 (Ct. App. 2006) (Specifically discussing N.M.Stat.Ann. §56-7-2). At the time of the contract underlying this lawsuit, § 56-7-1 provided in material part:

> A.   A provision in a construction contract that requires one party to the contract to indemnify, hold harmless, insure or defend the other party to the contract, including the other party's employees or agents, against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, its officers, employees or agents, is void, unenforceable and against the public policy of the state.
>
> * * *
>
> D.   As used in this section, "construction contract" means a public, private, foreign or domestic contract or agreement relating to construction, alteration, repair or maintenance of any real property in New Mexico and includes agreements for architectural services, demolition, design services, development, engineering services, excavation or other improvement to real property, including buildings, shafts, wells and structures, whether on or above or under real property.

In 2007, a year after the events at issue in this suit, New Mexico enacted a third anti-indemnity statute which specifically applies to equipment lease and rental contracts. That statute, N.M.S.A. 1978 §56-7-3 (2007) provides in material part:

> A.   A provision of a lease or rental contract for equipment that requires a party to the agreement to indemnify, hold harmless, insure or defend the other party to the agreement, including the other party's officers, employees or agents, against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by or resulting from, in whole or in

---

[1] Originally codified as N.M.Stat.Ann. §28-2-1 (1958), and subsequently renumbered under the 1978 statutes.

[2] Originally codified as N.M.Stat.Ann. §28-2-2 (1958), and subsequently renumbered under the 1978 statutes.

part, the negligence, act or omission of the indemnitee, its officers, employees or agents, is void, unenforceable and against the public policy of this state.

\*\*\*

D. As used in this section, "lease or rental contract for equipment" means any public, private, foreign or domestic contract or agreement relating to the temporary use of equipment without transfer of ownership of the equipment from one party to the other. (Emphasis added).[3]

## New Mexico Case Law

The New Mexico courts have long recognized that the primary goal behind anti-indemnity statutes is to promote safety. Guitard v. Gulf Oil Co., 100 N.M. 358, 361, 670 P.2d 969, 972(Ct. App. 1983) cert. denied 100 NM 327, 670 P.2d 581 (1983), and that this goal supersedes public policy favoring freedom of contract. Pińa v. Gruy Petroleum Management Co., 139 NM 619, 136 P.3d 1029 (Ct. App. 2006),

In Pińa, the New Mexico Court of Appeals, addressing the Oil Field Anti-indemnity statute, stated:

> Section 56-7-2 is an example of an extraordinarily limited class of statutes whose very subject is the enforceability of contracts that contravene a specific public policy. In 1971, when the Legislature enacted the original version of Section 56-7-2, it was well settled that freedom of contract is a "paramount" public policy "not to be interfered with lightly." Tharp v. Allis Chalmers Mgf.Co., 42 NM 443, 449, 81 P.2d 703, 706 (1938). In enacting Section 56-7-2, our Legislature directly addressed the conflict between the policies generally favoring freedom of contract and the policy generally favoring safety at well sites and mines located in New Mexico. The Legislature expressly determined that in this particular context, freedom of contract was to be subordinated to the policies furthered by the Oilfield Anti-Indemnity Statute. Where the Legislature has directly addressed the question of unenforceability on grounds of public policy, "the court is bound to carry out the legislative mandate with respect to the enforceability of the term." Restatement (Second) of Contracts, §178(2) cmt. A (1981)
>
> The Legislature's decision to expressly subordinate freedom of contract to well site safety is a persuasive indicator that the Legislature believed promoting safety as well

---

[3] The statute specifically excludes certain lease agreements, not pertinent here. NMSA 1978 56-7-3(F)-(H).

> sites to be an especially important public policy. The Legislature, which we presume was familiar with the strong public policy favoring freedom of contract, nevertheless, chose to elevate the public policy favoring safety at well sites over the public policies underlying freedom of contract . . .
>
> (The) safety concerns underlying Section 56-7-2 are not limited to the immediate parties to an indemnity agreement. By requiring an indemnitee to remain responsible for his own negligence, Section 56-7-2 protects third parties whose person or property would be placed at risk by the indemnitee's indifference to safety. Because Section 56-7-2 promotes the safety of third parties, an indemnity agreement prohibited by Section 56-7-2 is not purely a private matter.

Pińa v. Gruy Petroleum Management Co., 139 NM at 623-624, 136 P.3d at 1033-1034.

This reasoning applies equally to construction site safety addressed in §56-7-1. It is simply inconceivable that the New Mexico Legislature, when contemporaneously enacting two anti-indemnity statutes, intended to give more protection to well and mine workers than to construction workers.

## Federal Case Law

Federal law construing §56-7-1 is in accord. In Tucker v. R.A. Hanson Co., 956 F.2d 215 (10th Cir. 1992), the Tenth Circuit held:

> It is clear that it is the public policy of New Mexico not to enforce the indemnity provisions of construction contracts. N.M.Stat.Ann. § 56-7-1 (Michie 1991); Sierra v. Garcia, 746 P.2d 1105, 1108 (N.M.1987).
> * * *
> **The purpose of the anti-indemnity statute is to protect construction workers** and future occupants of a building **by ensuring that all those involved in its construction know that they will be held financially responsible for their negligence**. See Guitard v. Gulf Oil Co., 100 NM 358, 670 P.2d 969 (Ct. App.), cert denied, 100 NM 327, 670 P.2d 581 (1983) (articulating policies behind prohibition of indemnity provisions in mining contracts). Thus New Mexico law should control not so much because **indemnity clauses in construction contracts** violate "some fundamental principle of justice" but because they **signficantly interfere with New Mexico's efforts to produce safe workplaces and buildings**.

Tucker v. R.A. Hanson Co., 956 F.2d at 218-219 (emphasis added).

The New Mexico legislature chose to define a construction contract broadly in §56-7-1D,

6

as any "contract or agreement *relating to* construction, alteration, repair or maintenance of any real property in New Mexico . . ." Black's Law Dictionary, 1158 (6th Ed., 1990) defines "relate" as "to stand in some relation; to have bearing or concern, to pertain, to refer, to bring into association with or connection with. . ." The term "relating to" has been construed in other contexts, and in generally held to have a broad meaning unless a narrow construction is what the legislature intended.  Palmer v. St. Joseph Health Care P.S.O. Inc., 134 N.M. 405, 413, 77 P.3d 560, 568 (Ct. App. 2003) (discussing the terms "relating to" and "relates to" found in the Airline Deregulation Act of 1978, ERISA preemption and the Cigarette Labeling and Advertising Act of 1965).

A lease agreement covering equipment used at a construction site is an agreement "relating to construction" as defined in §56-7-1.  To hold otherwise would undermine the clear intent of the New Mexico Legislature in promoting work-place safety.

Case Law from Other States

The courts of other states have reached differing conclusions when considering whether a contract for the rental of construction equipment is covered by a particular state's anti-indemnity law.  American Pecco Corp. v. Concrete Building Systems Co., 392 F.Supp. 789 (N.D. Ill. 1975) (Construing Illinois law; voided indemnity agreement in crane lease, holding that Illinois legislature manifested clear intent to void exculpatory clauses that purport to hold a person harmless for his own negligence in construction related activities).  Folkers v. Drott Mfg. Co., 504 N.E. 2d 132 (Ill. Co. App. 1987) (Express indemnity provisions in rental contract between crane lessor and lessee fell squarely within anti-indemnity statute and were void as against public policy).  Aetna Cas. & Sur. Co. v. Marion Equipment Co., 894 P.2d 664 (Alaska 1995) (Indemnity provision in lease of construction hoist governed by Alaska's anti-indemnity statute).  Elliot Crane Service Inc., et al. v. H.G. Hill Stores, Inc., 840 S.W. 2d 376 (Tenn. App. 1992) (An indemnity/hold harmless agreement

printed on the back of "charge ticket" for the lease of crane and crane operator was an agreement "relative to the alteration, repair or maintenance of a building"and therefor void under Tennessee anti-indemnity statute). Pritts v. J.I. Case Co., 310 N.W. 2d 261 (Mich. Ct. App. 1981) (Court refused to extend Michigan anti-indemnity statute to construction lease of a travel lift). Reliance Ins. Co. v. Chevron U.S.A. Inc., 713 P.2d 766 (Wyo. 1986) (Oilfield anti-indemnity statute did not apply to contract to furnish caterpillar tractors to dig holding pits for waste water and oil created by fire at oil facility, as those services were not sufficiently related to well drilling, the activity covered by the statute). Palmour v. Gray Ins. Co., 731 So.2d 911 (La. Ct. App. 1999)( Louisiana oil-field anti-indemnity statute did not apply to an agreement to lease a cherry picker crane for an unnamed purpose. The statute applied only to leases which pertained to the exploration, development, production or transportation of oil, gas or water). McMunn v. Hertz Equipment Rental Corp. 791 F.2d 88, 93 (7th Cir. 1986) (Recognizing that the purpose of the Indiana anti-indemnity statute was to increase safety at construction sites, court refused to apply the statute to indemnity agreement in lease of a bob-cat loader, which could be leased for non-construction uses, such as snow removal).

Review of these cases convinces me that the general weight and trend of authority is to apply anti-indemnity provisions to invalidate agreements which reduce the incentive to provide safety at a location and for activities specifically covered in the anti-indemnity statute at issue.

N.M.Stat.Ann. §56-7-3

URI contends that the enactment of §56-7-3, which voids indemnity agreements contained in equipment lease or rental contracts, evidences a change in the law put into effect after the contact at issue in this case. URI further argues that the enactment of §56-7-3 would have been unnecessary if such contracts were covered under §56-7-1.

By enacting §56-7-3, the New Mexico Legislature did expand the reach of New Mexico's

public policy to void indemnity agreements. Under §56-7-3, an indemnity agreement connected to the lease of equipment used for <u>any</u> purpose, other than specified exceptions[4], is void. This expansion, however, does not alter the fact that prior to the enactment of §56-7-3, the lease of construction equipment for use at a construction site was an activity related to "construction, alteration, repair or maintenance" of real property, and therefore met the definition of construction contract as defined in §56-7-1.

<u>Conclusion</u>

In this case, the 50 foot scissor lift was leased for use at a construction site, for use in construction activities. The lease therefore related to construction, and is a construction contract as defined in N.M. Stat. Ann. §56-7-1. The design and/or condition of the lift impacted workplace safety. As such, New Mexico has a stated public policy of ensuring that all those involved in construction know that they are to be held financially responsible for their negligence.

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant Yearout Mechanical Inc., Motion to Dismiss (Docket No. 23 ), is **GRANTED**, and the action is **DISMISSED** with **PREJUDICE**.

_____
Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

---

[4]Section 56-7-3 does not apply to: motor vehicle rentals for vehicles designed and primarily used to transport people or property on public highways; security agreements or finance leases, as further defined in New Mexico Statutes; to equipment repossessed upon default of a finance lease by a repossessing lessor, or to lease or rental contracts for equipment used on the production of motion pictures or television. §56-7-3 F, G & H.